## HOUSTON, E. & W. T. RY. CO. v. RATCLIFF et al. (No. 299.)

(Court of Civil Appeals of Texas. Beaumont.
April 3, 1918. On Rehearing,
April 17, 1918.)

1. CARRIERS ⬦⟳69(3)—CARRIAGE OF FREIGHT —PERMISSION TO INSPECT—MEANING—SUFFICIENCY OF EVIDENCE.

In an action by the consignee of hay against the railroad which carried the shipment for damages from failure to permit adequate inspection, evidence *held* to show that the notation on the bill of lading, "Allow inspection," is universally understood by shippers and railroads to mean a side-door inspection of the freight.

2. CARRIERS ⬦⟳69(3)—CARRIAGE OF FREIGHT —INSPECTION—SUFFICIENCY OF EVIDENCE.

In such action, evidence *held* to show that a side-door inspection of the hay was permit-

ted the consignee, which was a reasonable in-pection under the custom.

On Rehearing.

**3. APPEAL AND ERROR** ☞**1175(5) — DISPOSI-TION—CONFESSION OF LACK OF EVIDENCE—RENDITION OF JUDGMENT.**

Where appellee in his motion for rehearing expressly states he cannot produce any more evidence to sustain his claim of liability against defendant appellant than was produced below, judgment, the case having been reversed on the appeal, will be rendered by the Court of Appeals for appellant.

Appeal from' Nacogdoches County Court; J. F. Perritte, Judge.

Suit by Wilton Ratcliff and others against R. E. Levers & Co. and the Houston, East & West Texas Railway Company. Judgment for plaintiff in a justice court was affirmed in the county court, and the Railway Company appeals. Reversed and rendered.

Baker, Botts, Parker & Garwood and McMeans, Garrison, & Pollard, all of Houston, and Arthur Seale, of Nacogdoches, for appellant. C. A. Hodges, of Nacogdoches, for appellees.

HIGHTOWER, C. J. We find in appellant's brief a statement of the nature and result of this suit, which, upon comparison with the record, appears to be correct, and is as follows:

Wilton Ratcliff' brought this suit against R. E. Levers & Co. and the Houston East & West Texas Railway Company, in the justice's court of Nacogdoches county, to recover damages in the sum of $115.67, with 6 per cent. interest thereon and reasonable attorney's fees, and upon a trial recovered judgment for the full amount sued for, less the attorney's fees. The Houston, East & West Texas Railway Company then appealed to the county court, where, upon a trial before that court without a jury, judgment was also rendered in favor of the plaintiff, and against the defendants, for said sum of $115, with 6 per cent. interest thereon from October 31, 1915, and for costs. From this judgment the defendant railway company alone has appealed to this court.

No new pleadings 'were filed by the plaintiff in the county court, and the only pleading found in the record is that which was filed by him in the justice's court, and which shows the basis of his cause of action, as follows:

"Now comes the plaintiff and states that the defendants owe him for damages $115.67, with 6 per cent. interest thereon, and a reasonable attorney fee, for that plaintiff bought from defendant Levers & Co. a car of hay, with the agreement and statement that the same was good, sound hay, and the kind and quality plaintiff had contracted to and did buy, and that when same arrived the defendant railway company refused to allow plaintiff to inspect it, and when same was taken from the car, plaintiff found the same damaged to the extent of $115.-67, and for which he made his demand more

than 30 days before filing this suit against the defendants."

The county court, upon request of the defendant railway company, filed findings of fact and conclusions of law, which were as follows:

"The plaintiff Wilton Ratcliff June 30, 1916, ordered of the defendant R. E. Levers & Co., Roswell, N. M., one car of choice, pea-green, alfalfa hay, to be delivered at Nacogdoches, Tex., $17.60 per ton, weights and grades guaranteed, with sight draft attached to bill of lading, but with instructions to railway company to allow plaintiff to inspect the hay upon its arrival, so that he may determine before paying the sight draft the hay was the kind and quality bought. This was confirmed July 12, 1916. The car arrived over the defendant railway company's road, at Nacogdoches, Tex., July 12, 1916. damaged to the extent sued for. The hay was sold as pea-green, choice, alfalfa hay, and upon its arrival the plaintiff asked permission from the defendant's railway agent for permission to inspect the hay before paying the sight draft. The railroad agent, in company with plaintiff, inspected the bill of lading at the Commercial Guaranty State Bank, which was marked 'allow inspection.' Upon return to the depot, the agent opened the side door, which was about 8 feet by 10 feet, which only enabled plaintiff to observe the outside of some 20 to 25 bales of hay. The plaintiff then made a repeated effort to examine further into the hay, which the agent of the railroad company refused to allow. The consignor insisted by telegram that the shipment was as ordered, and would divert shipment at plaintiff's expense if not accepted by him. The car contained 485 bales of hay, and the railroad agent only allowed a side-door inspection; that is, opened the door, permitting plaintiff to observe the outside of the bales exposed in the door, which was sound. The defendant not allowing further inspection, the plaintiff paid the sight draft, undertook to remove the contents of the car, found a considerable amount of the hay rotten, which the railroad company admitted on the trial, to the extent of the damage sued for. The shipment had been diverted, and had been on the road a considerable time. Had plaintiff been permitted to have made a reasonable inspection, he would have learned that the hay was not sound, and declined the shipment. Not having been permitted to observe more than the hay exposed in the door, he was unable to tell the condition of the hay other than the outside exposed bales. The plaintiff so wired the consignor before paying sight draft. The railroad still declining any further inspection, the plaintiff would be liable to the consignor if the hay was sound, should he refuse the shipment, and, after having been assured by the consignor that the hay was choice alfalfa, paid the sight draft, unloaded the hay, and sustained damage to the extent of $115.67, the amount of the claim about which there is no controversy, and which claim the plaintiff presented to the defendants for more than 30 days prior to the filing of this suit, and from the testimony I find that $15 is reasonable attorney's fees for the plaintiff to prosecute this suit.

"Conclusions of Law.

"From the foregoing facts I conclude that the defendants are liable to the plaintiff for the sum of $115.67, the amount of the damages sustained by the plaintiff because the hay was rotten upon its arrival at Nacogdoches, and that the railway company is liable as a matter of law for its refusal to allow plaintiff to make sufficient inspection of the hay to enable him to determine whether or not the hay was sound, but conclude that the plaintiff is not entitled to recover any

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

attorney fees, and enter judgment accordingly. This the 26th day of April, 1917. Filed at the request of the defendant railroad company."

The first assignment of error found in appellant's brief, assailing the finding of fact made by the trial court, is not tenable, and we overrule the same without further comment.

The second assignment of error is as follows:

"The court erred in finding as a fact, and in part basing his conclusions of law thereon, that, 'Had plaintiff been permitted to have made a reasonable inspection, he would have learned that the hay was not sound, and declined the shipment,' for the reason that, in so far as such finding is tantamount to a finding that defendant did not permit plaintiff to make a reasonable inspection, such finding is not supported by the evidence, in that the evidence shows that the only authority defendant possessed to allow an inspection was perforce of the notation indorsed on the bill of lading, viz.: 'Allow inspection,' and that under the undisputed proof, where a bill of lading is so indorsed, only a 'side-door' inspection is allowed; hence to allow such an inspection is, in such circumstances, a reasonable inspection."

We have carefully examined the entire record in this case, and we find that the only authority or provision permitting or authorizing the railway company to allow plaintiff to inspect or examine this shipment of hay before its acceptance by him is the notation on the bill of lading under which the shipment moved, namely, "Allow inspection." It was clearly and positively proved by the railway company's agent at Nacogdoches, who acted for the railway company in this matter, and who delivered this shipment of hay to the plaintiff, that this notation on a bill of lading, "Allow inspection," meant what is known to shippers and railway companies as a side-door inspection; in other words, the notation, according to this witness, meant that the plaintiff, under this bill of lading, was authorized and had the right to examine this shipment of hay by opening the side doors of the car in which the same was stored, which doors were about 8 feet wide and 10 feet high, and by that means to permit the plaintiff to examine this shipment of hay; that said witness had no authority from the railway company to permit any of this hay to be unloaded from the car prior to its acceptance by the plaintiff, and that it was the universal custom of railway companies, and was understood that such a notation on a bill of lading did not authorize or permit a consignee to unload a shipment, for the purpose of examination, but confined his examination and inspection to such as could be made by opening the side doors of the car for that purpose; that this character of inspection was fully permitted to the plaintiff, and this is not denied by the plaintiff himself. It was also positively proved by another witness, F. R. Penman, who was connected at Nacogdoches with the W. T. Wilson Grain Company for many years, that said witness had had a great deal of experience in the buying and shipment of grain and hay, and with railway companies in general, handling such shipments, and that he was quite familar with the rules and customs governing such shipments and deliveries; and this witness positively testified that it had always been, and was still, the custom and practice of railway companies, when a bill of lading reads, "Allow inspection," to permit what is known as a side-door inspection; that is, the agent of the railway company or man in charge would open the side doors or windows of the car and permit the consignee of such shipments to examine the freight from such doors and windows, but would not, under any circumstances, permit the freight to be unloaded from the car.

[1, 2] This was practically all the testimony bearing on the contention that appellant refused to permit plaintiff to inspect this shipment of hay before the same was accepted by him, other than his own statement, which was, in substance, that in his opinion such character of inspection was not sufficient, and would not afford him a thorough inspection of this shipment of hay. We think that the testimony of the witnesses, Greeves and Penman, when properly analyzed and given proper weight, shows, without serious controversy, that the notation, "Allow inspection," is universally understood by shippers and railway companies to mean what is called a side-door inspection of freight moving under such bill of lading, and we further think that the evidence in this case shows, without dispute, that such character of inspection was permitted the plaintiff in this instance.

There is no contention in this case that this shipment of hay became damaged by reason of any fault, wrong, or breach of contract on the part of the railway company, or that the railway company is liable to the plaintiff upon any theory, save that it refused to allow plaintiff to make a thorough inspection of the hay before he accepted the same; and, of course, if the plaintiff has failed to establish liability against appellant upon that theory, this judgment cannot stand. We note this notation from Mr. Elliott on Railroads:

"It is held in many of the cases that the consignee must have a reasonable opportunity to inspect the goods. Some of the cases hold that the carrier may permit the consignee to take away the goods for the purpose of inspection; but, of course, when the goods are removed by the consignee, and are rightfully in his possession, there is no liability on the part of the carrier. It is barely necessary to suggest that if there is no right to permit the goods to be taken by the consignee, and loss is caused the consignor by the wrong of the railroad carrier in suffering the consignee to obtain possession of the goods, it will be liable to the consignor. We doubt whether it can be justly held that the consignee, as against the carrier, can rightfully insist upon permission to make a minute inspection, and we think that when the term 'inspect' or the term 'inspection' is used by the courts, it means no more than the consignee

shall have a right, if he demands it, to make a general examination of the goods. The decisions which declare and enforce the right of inspection where goods are shipped 'C. O. D.' cannot, in all their scope, at least, apply in other cases."

It seems that the cases are rare in which liability has been sought to be imposed against a carrier by railway in instances of this kind, so much so that we have been really surprised to find such a paucity of decisions on the question. We have examined the authorities found in appellees' brief, which it is contended uphold the liability contended for in this instance, but, upon analyzing them, we find that they have no controlling effect under the undisputed facts of this case.

After careful consideration of this assignment, we are constrained to hold that it must be sustained, notwithstanding the fact that it is undisputed by this record that the plaintiff has sustained damages to the extent claimed by him, but it is manifest, or at least the evidence now before this court, as disclosed by the record, is insufficient to fasten liability for such damages upon the appellant in this case. This assignment of error is therefore sustained, for which the judgment must be reversed.

There are several other assignments contained in appellant's brief, which we shall not discuss numerically, and which we think are untenable, and they are overruled.

For the error pointed out, this judgment is reversed, and the cause remanded.

### On Rehearing.

At a former day of this term the judgment of the trial court in this case was reversed, and it was ordered that the cause be remanded for a new trial. The ground upon which the court reversed the judgment of the trial court was the insufficiency of the evidence to support the finding and judgment of the trial court, to the effect, substantially, that the appellant was liable for the damages claimed by appellee, for the reason that appellant refused to permit appellee to inspect the shipment of hay in question, as appellant was bound to do under the bill of lading on which the shipment moved. The reasons in full for this court's judgment are shown in the original opinion, and need not be repeated here. In due time after the original opinion was filed, both the appellee and appellant have filed motions for a rehearing; the appellee praying that our former opinion be set aside, and that judgment be rendered affirming the judgment of the trial court, and the appellant praying that a rehearing be granted, and that this court reverse and render the judgment of the trial court.

The appellee, in his motion for rehearing, has raised no new question, and this court has seen no reason why it should recede from its original holding in this case, being still of the opinion that the evidence clearly showed that the appellee was permitted to make such inspection of the shipment of hay in question as was contemplated and provided in the bill of lading on which the shipment moved, and therefore appellee's motion for rehearing must be overruled.

[3] We notice in appellee's motion for rehearing the express statement that appellee cannot produce any more evidence to sustain his claim of liability against the appellant in this case than was produced on the trial below, and therefore there could be no reason for remanding the cause for a new trial, but in such event it becomes the duty of this court to reverse and render the judgment of the trial court.

It is therefore ordered that appellant's motion for rehearing be granted, and the judgment heretofore rendered by this court, reversing and remanding the cause, is here now set aside, and it is now ordered that the judgment of the trial court be reversed and here rendered in favor of appellant.